IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:08cv338
(3:05cr341)

| | |
|---|---|
| GERMAN ANTONIO MILLON, ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| v. ) | O R D E R |
| ) | |
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Respondent. ) | |

**THIS MATTER** is before this Court upon Petitioner's Motion to Vacate, Set Aside or Correct Sentence under 28 U.S.C. § 2255 (Doc. No. 1) and his inquiries regarding the status of his motion (Doc. Nos. 2 and 3).

I.      FACTUAL AND PROCEDURAL BACKGROUND

In July 2005, a confidential informant working under the direction of the Charlotte-Mecklenburg Police Department met with Petitioner and negotiated a deal to purchase 80 pounds of marijuana and a large quantity of powder cocaine. (Case No. 3:05cr341, Presentence Report ("PSR") at ¶ 7).[1] Petitioner agreed to sell the drugs for $94,000 and deliver them to the informant on August 3, 2005. (Id.). On August 3, 2005, Petitioner and the informant had a telephone conversation during which Petitioner advised that the drugs would arrive later that afternoon, and he agreed to complete the sale in a nearby parking lot. (Id. at ¶ 8). At that meeting, Petitioner entered the parking lot in a white pick-up truck. (Id.). Law enforcement officers performed surveillance as the informant went to the lot, got into Petitioner's truck, and

---

[1] Petitioner did not object at sentencing to the facts as stated in his Presentence Report.

awaited delivery of the drugs by Petitioner's co-conspirator, Marlon Viera. (Id.). Less than an hour later, Viera drove onto the parking lot and parked next to Petitioner. (Id. at ¶ 9). Officers moved in to arrest both co-conspirators, taking Viera into custody immediately and finding him in possession of two plastic bags containing 80 pounds of marijuana, two kilograms of powder cocaine, and a .45 caliber pistol. (Id. at ¶¶ 10-11). Petitioner fled the scene but was arrested minutes later by a uniformed officer. (Id. at ¶ 10).

Subsequent to his arrest, Viera told investigating officers that Petitioner had approached him about getting drugs for someone—the confidential informant—who was interested in purchasing 80 pounds of marijuana and two kilograms of cocaine. (Id. at ¶15). Viera subsequently spoke with an individual known only as "Quara" who instructed him to travel to Texas to pick up the drugs. (Id. at ¶ 13). Quara gave Viera $500 for his expenses and a pistol[2] to protect himself and the drugs, and he promised to pay Viera $3,000 for his work. (Id. at ¶¶ 13, 15). Viera picked up the drugs in Texas on August 1, 2005, and returned to Charlotte on August 2, 2005, for the sale. (Id. at ¶ 13-14). Viera initially said that Petitioner knew about the gun. (Id. at ¶ 15). Upon his arrest, Petitioner declined the investigating officers' request for an interview.

Consequently, on September 27, 2005, federal prosecutors filed a two-count indictment charging Petitioner with conspiring to possess with intent to distribute an unspecified quantity of marijuana and at least five hundred grams of powder cocaine, in violation of 21 U.S.C. §§ 841(b)(1)(B), 841(b)(1)(D), and 846 ("Count One"), and using and carrying a firearm during and in relation to a drug trafficking crime and, and aiding and abetting that offense, in violation of 18 U.S.C. §§ 924(c) and 2 ("Count Two"). (Case No. 3:05cr341, Doc. No. 1: Indictment).

---

[2] Viera described the gun as a 9mm, but the gun found with the drugs was a .45 caliber.

Petitioner initially entered into a plea agreement covering both Counts One and Two. (Case No. 3:05cr341, Doc. No. 23: Plea Agreement). However, on February 16, 2006, Petitioner entered into an amended plea agreement in which he agreed to plead guilty only to Count One. (Case No. 3:05cr341, Doc. No. 27, Amended Plea Agreement). The amended plea agreement explicitly stated that he faced a statutory range of five years to forty years' imprisonment (Id. at ¶ 4), and that the Court could consider any dismissed counts or other pertinent information as "relevant conduct" under United States Sentencing Guidelines ("U.S.S.G." or "Guidelines") § 1B1.3. ( Id. at ¶ 3).

Petitioner appeared before a magistrate judge and entered his guilty plea the same day. (Case No. 3:05cr341, Doc. No. 28: Entry and Acceptance of Guilty Plea). During that proceeding, the magistrate judge placed Petitioner under oath and engaged him in a lengthy colloquy to ensure that his plea was tendered intelligently and voluntarily. (Id.). After acknowledging, inter alia, that he was obligated to give truthful answers, Petitioner told the Court that he understood the charge and its corresponding penalties, he understood the consequences of entering his guilty plea, and he understood the terms of his plea agreement. (Id. at 2-4 ). Petitioner also affirmed that no one had threatened, intimidated, or forced him to enter his guilty plea, and that outside the terms of his plea agreement, no one had made him any promises of leniency or a light sentence to induce his guilty plea. (Id. at 4). Petitioner also admitted his guilt to the subject charge. (Id. at 3). Thereafter, the magistrate judge determined that Petitioner's guilty plea was knowingly and voluntarily given, and accepted the plea. (Id. at 5).

The Court initially scheduled Petitioner's case for sentencing on July 13, 2006. However, at the outset of that proceeding, Petitioner's retained attorney advised the sentencing court that

3

Petitioner had filed a "bar complaint" against him. (Case No. 3:05cr341, Sent'g. Tr. at 3-4, filed November 1, 2006 ). Consequently, the Court discharged counsel, agreed to appoint replacement counsel, and continued the hearing. (Id. at 5).

On November 26, 2006, the Court reconvened Petitioner's sentencing hearing. On that occasion, Petitioner reaffirmed his answers to the magistrate judge's questions, specifically indicating that his answers had not changed, and that he had pled guilty because he was, in fact, guilty of the conspiracy charge. (Case No. 3:05cr341, Sent'g. Tr. at 3-4, filed December 4, 2006). Petitioner told the Court that his replacement counsel had not gone over his PSR with him, although counsel told the Court that he had in fact done so. (Id. at 5-6). Counsel then articulated Petitioner's essential objection to the PSR, which was that Petitioner could not understand why he was facing 70 to 87 months' imprisonment under the Guidelines when he was reportedly told by both the magistrate judge and his former counsel that he would only receive a five year sentence. (Id. at 6-8). The Court overruled Petitioner's objection, finding instead that: (1) Petitioner's plea agreement properly informed him that he was facing a statutory mandatory minimum term of five years and a maximum of 40 years' imprisonment; (2) Petitioner had knowingly and voluntarily entered into that agreement; (3) during his Rule 11 Hearing, the Court properly advised Petitioner of those statutory terms; and (4) Petitioner knowingly and voluntarily tendered his guilty plea pursuant to the terms of his plea agreement. (Id. at 8-10) (emphasis added).

The Court adopted the PSR's calculation, including a two-level firearm enhancement under U.S.S.G. § 2D1.1(b)(1) (Case No. 3:05cr341, PSR at ¶ 25), a Total Offense Level of 27 (Id. at ¶ 32), and a Criminal History Category of I (Id. at ¶ 37). The resulting advisory guideline

4

was 70 to 87 months' imprisonment. (Id. at ¶ 55). Ultimately, the Court sentenced Petitioner to 70 months' imprisonment. (Case No. 3:05cr341, Doc. No. 45: Judgment).

Petitioner timely appealed his case to the Fourth Circuit Court of Appeals where he argued that counsel's failure to advise him or subject the Government's case to the required level of adversarial testing amounted to ineffective assistance. Brief of Appellant at 23-37, United States v. Millon, No. 06-5039 (4th Cir. March 7, 2007). The Fourth Circuit affirmed Petitioner's conviction and sentence because counsel's alleged ineffectiveness did not conclusively appear on the record. United States v. Millon, 276 F. App'x 268 (4th Cir. 2008) (unpublished per curiam opinion). Nevertheless, the Fourth Circuit advised Petitioner that he could return to this Court and raise his claim against counsel in a § 2255 collateral proceeding. Id.

Thus, Petitioner filed the instant motion to vacate. On the merits, Petitioner argues that he should not have received a sentence enhancement for use of a firearm under U.S.S.G § 2D1.1[3] because he did not physically possess the gun found in his co-conspirator Viera's car, and he had no knowledge that Viera planned to bring a firearm. (Doc. No. 1: Memorandum at 4-7). Although he failed to raise this issue on direct appeal, Petitioner advances the following as grounds to excuse procedural default under 28 U.S.C. § 2255: (1) that he is "actually innocent" of the two-level firearm enhancement (Id. at 3); and (2) that his attorney rendered ineffective assistance of counsel for failing to object to that enhancement or raise the issue on appeal (Id. at 7). Petitioner asks this Court to vacate his sentence and re-sentence him in consideration of a lower offense level under the Guidelines. (Id. at 8).

---

[3] The 2005 edition of the Guidelines was used to calculate Petitioner's advisory sentence. (Case No. 3:05cr341, Presentence Report at ¶ 23).

## II. DISCUSSION

Pursuant to Rule 4(b) of the Rules Governing Section 2255 Proceedings, sentencing courts are directed to promptly examine motions to vacate, along with "any attached exhibits, and the record of prior proceedings " in order to determine whether petitioner is entitled to any relief. If the petitioner is not entitled to relief, the motion must be dismissed. Id. After such examination, it plainly appears to the Court that Petitioner is not entitled to any relief on his claim.

    A.    Petitioner's plea agreement waived his right to collaterally attack the firearm enhancement.

Pursuant to the post-conviction waiver in his plea agreement, Petitioner waived his right to challenge his sentence except "on the basis that one or more findings on guideline issues were inconsistent with the explicit stipulations" in his plea agreement. (Case No. 3:05cr341, Doc. No. 27: Plea Agreement at ¶ 20). The Fourth Circuit has upheld knowing and voluntary waivers of the right to collaterally attack sentences through § 2255 motions. United States v. Lemaster, 403 F.3d 216, 220-21 (4th Cir. 2005). At his Rule 11 hearing, Petitioner swore under oath that he understood this waiver. (Case No. 3:05cr341, Doc. No. 37: Acceptance and Entry of Guilty Plea at 4). The magistrate judge found his plea to be knowing and voluntary. (Id. at 5). Notwithstanding his objection to the PSR, this Court also found the same. (Case No. 3:05cr341, Sent'g. Tr. at 9, filed Dec. 4, 2006).

The issue presented in the instant motion falls squarely within that agreement because a provision authorizes the Court to consider Petitioner's dismissed firearm charge as "relevant conduct" under U.S.S.G. § 1B1.3. (Id. at ¶ 3). Section 1B1.3(a) directs that such conduct be

used to determine specific offense conduct under Chapter Two of the Guidelines. Thus, the use of Petitioner's dismissed firearm charge to enhance his sentence under U.S.S.G. § 2D1.1(b)(1) was entirely consistent with his plea agreement. Consequently, the Court finds that the waiver provision is valid and fully enforceable, and it stands as an absolute bar to Petitioner's claim that his sentence enhancement under U.S.S.G. § 2D1.1 is improper.[4]

      B.      Petitioner's claim is also procedurally defaulted.

Even if not waived by his plea agreement, Petitioner has procedurally defaulted his claim. Claims brought under 28 U.S.C. § 2255 that could have been raised on appeal, but were not, are procedurally defaulted. Bousley v. United States, 523 U.S. 614, 621 (1998) ("Habeas review is an extraordinary remedy and will not be allowed to do service for an appeal.") (internal citations and quotations omitted). "Where a defendant has procedurally defaulted a claim by failing to raise it on direct review, the claim may be raised in habeas only if the defendant can first demonstrate either cause and actual prejudice, or that he is actually innocent." Id. at 622 (internal citations and quotations omitted). Here, Petitioner did not raise the guidelines issue on direct appeal, although he could have. Thus, he may not advance this claim except by demonstrating cause to excuse his default and prejudice resulting from improper application of federal law, or that he is actually innocent. Id.

      1.      Ineffective Assistance of Counsel

Petitioner contends that cause exists to excuse his procedural default because his counsel's failure to object to the firearm enhancement at sentencing or raise that specific issue on

---

[4] As discussed below, Petitioner has failed to establish ineffective assistance of counsel regarding the Guidelines issue. Therefore, the exception to the waiver for ineffective assistance of counsel does not apply.

7

appeal amounted to ineffective assistance of counsel. (Doc. No. 1: Memorandum at 7-8). Even when using ineffective assistance to excuse procedural default on another independent claim, counsel must have been so wholly ineffective as to violate Petitioner's Sixth Amendment right. Edwards v. Carpenter, 529 U.S. 446, 451 (2000) (citing Murray v. Carrier, 477 U.S. 478, 488-89 (1986), abrogated on other grounds by Sawyer v. Whitley, 505 U.S. 333 (1992)).

Thus, Petitioner must show that by failing to challenge the firearm enhancement under U.S.S.G. § 2D1.1, counsel's performance fell below an objective standard of reasonableness, and that he was prejudiced by such constitutionally deficient representation. Strickland v. Washington, 466 U.S. 668, 687-91 (1984). In measuring counsel's performance, there is a strong presumption that counsel's conduct was within the wide range of reasonable professional assistance. Id. at 689; see also Fields v. Attorney Gen. of State of Md., 956 F.2d 1290, 1297-99 (4th Cir.1992) (applying Strickland).

Ineffective assistance of counsel may establish cause for a procedural default, but "the mere fact that counsel failed to recognize the factual or legal basis for a claim, or failed to raise the claim despite recognizing it, does not constitute cause for a procedural default." Murray, 477 U.S. at 486 (1986). A decision not to challenge the application of a Guidelines enhancement, absent clear indication from the "plain language" of the Guideline provision or controlling precedent holding that such an application is improper, "at worst amount[s] to a miscalculation of the likelihood of success of such a challenge." United States v. Mikalajunas, 186 F.3d 490, 493 (4th Cir. 1999). Such a decision by counsel, even if later proven erroneous, does not establish cause to excuse a procedurally defaulted claim. See Id. (rejecting a claim of ineffective assistance for counsel's failure to object to an offense enhancement under U.S.S.G. § 3A1.3, restraint of the victim, which the court admitted did not apply in light of later precedent).

Petitioner cannot therefore claim that counsel's failure to object to or appeal his firearm enhancement under § 2D1.1(b)(1) of the Guidelines is cause to excuse this procedurally defaulted habeas petition. It was neither contrary to the plain language of § 2D1.1(b)(1) nor inapplicable under then-existing controlling precedent. In fact, as is discussed infra, the enhancement is proper under federal law. Thus, counsel's failure to object or file an appeal on this ground was not ineffective assistance and cannot establish cause to excuse procedural default. Mikalajunas, 186 F.3d at 493.

2. Actual Innocence

Petitioner also contends that procedural default is excused by his "actual innocence" of the sentence enhancement he received under U.S.S.G. § 2D1.1(b)(2). (Doc. No. 1: Memorandum at 3). In support of this claim, Petitioner includes a sworn affidavit from Viera, his co-conspirator, claiming that Petitioner had no knowledge of the firearm Viera carried during the attempted transaction. (Doc. No. 1: Sworn Affidavit at ¶ 6).[5] When presented with a procedurally defaulted claim under 28 U.S.C. § 2255 alleging actual innocence, federal courts must first consider all non-defaulted claims for comparable relief and other avenues to excuse default before considering actual innocence. Dretke v. Haley, 541 U.S. 386, 393-94 (2004). Having now done so in this case, Petitioner's claim of actual innocence is ripe for review. At the outset, however, it is clear that actual innocence does not excuse procedural default in Petitioner's case.

The Fourth Circuit has held that when a procedurally defaulted § 2255 habeas petition challenges a sentence, actual innocence will only excuse default if it relates to "eligibility for

---

[5] But see (Case No. 3:05cr341, PSR at ¶15) (noting that Viera told law enforcement officers at the time of the offense that Petitioner knew about the gun).

application of a career offender or other habitual offender guideline provision." Mikalajunas, 186 F.3d at 495. See also Watkins v. Driver, No. 2:06cv42, 2007 WL 5131715, at *12 (N.D.W.Va. Sept. 20, 2007) (holding that Mikalajunas "squarely rejects any chance of petitioner obtaining relief" for a claim of actual innocence related to a time-barred motion to vacate the petitioner's sentence under § 2255). Thus, actual innocence is no excuse to procedural default for § 2255 challenges to Guidelines enhancements outside career or habitual offender provisions.

Petitioner's claim simply does not fall within one of these narrow exceptions. Section 2D1.1, of which Petitioner claims he is actually innocent, acts to increase base offense level for use of a firearm and has no bearing on criminal history. Under the rule established in Mikalajunas, Petitioner's claim of actual innocence regarding his base offense level cannot, even if persuasive, excuse his procedural default. His claim must therefore fail.

      C.      Petitioner's underlying claim is also without merit.

The Court notes additionally that even if it were to reach the merits of Petitioner's habeas petition, it would still fail. Section 2D1.1(b)(1) of the Guidelines directs that a defendant's base offense level be increased by two levels "[i]f a dangerous weapon (including a firearm) was possessed" during commission of the offense. In the case of a joint criminal venture or conspiracy, Section 1B1.3(a)(1)(B) directs the sentencing court to consider "all reasonably foreseeable acts and omissions of others in furtherance of the jointly undertaken criminal activity" as offense conduct imputed to each of the co-defendants. Petitioner pleaded guilty to conspiracy charges stemming from the drug deal he attempted with Viera, his co-conspirator, who brought a firearm. Thus, Petitioner is subject to a base offense level enhancement under the Guidelines if it was reasonably foreseeable that Viera would carry a gun in furtherance of their joint criminal venture.

Case law from the Fourth Circuit makes clear that the use or carrying of guns is a reasonably foreseeable consequence to narcotics deals involving large amounts of cash or drugs. United States v. Kimberlin, 18 F.3d 1156, 1160 (4th Cir. 1994) ("[A]bsent evidence of exceptional circumstances, . . . a codefendant's possession of a dangerous weapon is foreseeable to . . . an exchange of controlled substances for a large amount of cash.") (quoting United States v. Bianco, 922 F.2d 910, 912 (1st Cir. 1991)).  Although there is no mechanical definition for a "large" amount of cash or drugs, previous cases affirming sentence enhancements under § 2D1.1(b)(1) provide helpful benchmarks.  See, e.g., United States v. White, 875 F.2d 427, 429 (4th Cir. 1989) (307 grams of cocaine); United States v. Mangual, 278 F. App'x 267, 272 n. 2 (4th Cir. 2008) (unpublished per curiam opinion) (500 grams of cocaine); United States v. Dominguez-Villegas, 200 F. App'x 227, 228 (4th Cir. 2006) (unpublished per curiam opinion) (fourteen kilograms of cocaine and $26,000).  Neither a "physical nexus" to the firearm, Mangual, 278 F. App'x at 272, nor actual awareness of its existence, Kimberlin, 18 F.3d at 1159-60, is required to impose a sentence enhancement under U.S.S.G. § 2D1.1(b)(1).

Here, the evidence before the Court at sentencing established that Petitioner attempted to sell 80 pounds of marijuana and two kilograms of cocaine for $94,000.  (Case No. 3:05cr341, Presentence Report at ¶ 7).  This quantity of drugs and cash puts Petitioner's case comfortably among the facts of White, Mangual, and Dominguez-Villegas, where the Fourth Circuit determined the presence of guns to be reasonably foreseeable.  Given this controlling precedent, Petitioner cannot dispute that it was reasonably foreseeable that Viera would carry a firearm to the attempted transaction.

Even taking Viera's sworn affidavit stating that Petitioner had no knowledge of the firearm at face value, actual knowledge is not required, and to plead its absence is unavailing. Kimberlin, 18 F.3d at 1159-60; see also Mangual, 278 F. App'x at 272 ("[T]here was no evidence [the defendant] had ever been . . . aware that [his co-conspirator] possessed a firearm."); Dominguez-Villegas, 200 F. App'x at 228 n. * ("[The defendant] does not argue that it was clearly improbable that the firearm was connected to the drug offense, rather that it was not reasonably foreseeable to him.") (emphasis added). Thus, Petitioner's two-level sentence enhancement under U.S.S.G. § 2D1.1(b)(1) was a proper application of federal law. His claim to the contrary is without merit and would not warrant relief in any case.

III. CONCLUSION

The Court has considered the motion and documents submitted by Petitioner along with the entire record of this matter and the controlling law, and has determined that Petitioner clearly is not entitled to any relief on his claims.

**IT IS, THEREFORE, ORDERED** that Petitioner's Motion to Vacate (Doc. No. 1) is **DISMISSED**.

**IT IS FURTHER ORDERED** that the issuance of this Order renders Petitioner's motions regarding the status of this matter (Doc. No. 2 and 3) moot.

The Clerk is directed to serve a copy of this Order on the United States Attorney's Office and German Millon, No. 21526-058, CI McRae, Correctional Institution, P.O. Drawer 30, McRae, Georgia 31055, and document such action. The Clerk is further directed to notify the Fourth Circuit of the status of this matter.

Signed: October 7, 2009

Robert J. Conrad, Jr.
Chief United States District Judge